IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-CR0076 SEP |
| | ) |
| ANDREW GAVIN WYNNE | ) |
| | ) |
|     Defendant. | ) |

**<u>SENTENCING MEMORANDUM</u>**

    For as long as he can remember, Andrew Gavin Wynne ("Gavin") wanted to be a lawyer.[1] Growing up in the small farm town of Olney, Illinois, he wasn't sure if this would ever be possible, but it was his dream. Not many people from Olney went farther than the local community college after graduation. Gavin recalls that only a handful of classmates in the 2006 graduating class at East Richland High School left town. But he had a dream and the support of two loving parents. Gavin worked hard in both undergrad and in law school. He took out student loans and worked five days a week to pay for his tuition and living expenses. Upon graduation he diligently sought a job to support his daughter, pay back his loans, and fulfill his dream of becoming an attorney.

    Gavin took immense pride in his work, and he took the role of "counselor" seriously. For five years he was a dedicated and professional legal practitioner. His work was excellent. He was well-liked by clients and colleagues. He received promotions and accolades and was respected for his above-and-beyond efforts on behalf of his clients and his firms. But beneath the surface Gavin was struggling with

---

[1] All the information in this sentencing memo comes from school, mental health, and substance abuse treatment records, as well as interviews and other primary sources. Supporting documents are available upon request for review by the court or parties.

untreated trauma and mental health issues and a worsening addiction to alcohol and drugs. Compounded with a large and stressful caseload and the isolation of the Covid pandemic, Gavin made a series of horrible and inexcusable choices that led him to blow up the dream that he had worked so tirelessly for.

No one is more remorseful or shamed by this situation than Gavin Wynne. He has hurt his clients, his employer, his friends and family, the legal profession, and most certainly himself. He has lost his career, his law license,[2] and his reputation. He has lost everything he has ever worked for. This is rock bottom for Gavin. But Gavin has not given up hope. He is choosing to see this as a second chance at life. He is choosing to start over with a new dream, a dream that involves him helping others who are also struggling with addiction. A dream that involves him repaying those hurt by his indefensible actions. Gavin cannot go back and change the past, but he can work every day to do some good in the world while repairing the damage he has caused. This is not the end of Gavin's story.

   

**Gavin and mom, coming home from hospital**     **Gavin and dad, 2nd birthday**

Gavin Wynne met his parents for the first time when he was three days old. Placed for adoption at birth by a teenager mother, he was brought home by Andrew and Patricia Wynne on February 5, 1988.

---

[2] Gavin has voluntarily surrendered his law license to the Missouri Supreme Court.

Because his father is also Andrew Wynne, he has affectionately been known as "Gavin" throughout his life. Andrew and Patricia desperately wanted to be parents but had almost lost hope that this would ever come to be after thirteen years of marriage. Their only child, Patricia describes Gavin as "the light of our lives."[3] Andrew says, "He has made my life a joy . . . he was my best bud."[4]

 

**Gavin as a child**

For the most part, Gavin had a loving and normal childhood. He played several different sports despite struggling with asthma. He took piano lessons and played in the school band. He attended church on Sundays with his family. He was doted on by his parents and was overall a "very happy baby"[5] and a "kind and loving child."[6] However, Gavin was also going through something unknown to his parents that would affect him for the rest of his life. For over a year, Gavin's older cousin, Melissa, was sexually abusing him on a regular basis. Though his parents loved him deeply, they did not know how to respond

---

[3] Letter from Patricia Wynne.

[4] Letter from Andrew P. Wynne.

[5] Letter from Patricia Wynne.

[6] Letter from Roberta Mccleave.

to this situation involving another member of the family. When they finally became aware of the abuse, they stayed away from Melissa's family for a period of time, but eventually things went back to normal as if nothing had happened. [7] Gavin never received any counseling for this traumatic experience. He pushed it under the rug, much like he felt his parents had done. And what Gavin took from this was a terrible lesson, one that would come back to harm him many years later when he began struggling with work, mental health, and addiction: If something bad is going on, you are on your own; no one will be there to help you. [8]



**Gavin and his parents at his high school graduation**

For many years, Gavin was able to compartmentalize this trauma and continue on in the support of his dream of becoming a lawyer. After graduating high school, he enrolled at St. Louis University, taking out student loans and working five days a week to pay for the cost of school. Having grown up in the Catholic Church, it felt like the right fit for him and he loved his time there. He worked hard

---

[7] More than half of all children who are sexually abused are abused by a family member. It is very common for other family members to experience feelings of shock, rage, confusion, denial, disbelief and/or guilt about the abuse, particularly when the perpetrator is also a family member. The National Child Traumatic Stress Network, *Coping with the Shock of Intrafamilial Sexual Abuse*, available at http://nctsn.org/nctsn_assets/pdfs/caring/intrafamilialabuse.pdf.

[8] Unresolved, untreated trauma is central to the development of multiple, severe, and persistent health and mental health problems and substance abuse. "The Damaging Consequences of Violence and Trauma: Facts, Discussion Points, and Recommendations for the Behavioral Health System." Complied by Ann Jennings, Ph.D. for the National Technical Assistance Center for State Mental Health Planning (NTAC) and the National Association of State Mental Health Program Directors (NASMHPD), 2004.

academically and made many lifelong friends. In 2010, Gavin graduated with a double major in criminal justice and philosophy. After college, he enrolled at Western Michigan University Cooley Law School, where he had received a small scholarship. Though the hundreds of thousands of dollars in student loans he would now owe was daunting, and the distance from his daughter, who was born during his first year of law school, was difficult, Gavin did not want to give up on his dream. He interned with the city attorney and prosecuting attorney's office in Lansing during his time in law school, but ultimately decided to come back to Missouri in 2013 to be closer to his daughter.

 

**Gavin's college graduation**          **Gavin's law school graduation**

Though he initially struggled to get a job in the tight-knit legal market of St. Louis, doing document review and working at a pizza place to pay the bills, Gavin was soon offered a job at a small civil firm in Jefferson City. Although he did not want to move away once again from his daughter, he recognized the opportunity to break into the legal profession in Missouri and jumped at it. There, he did a variety of legal work including personal injury litigation and estate planning. However, his favorite work was the time he spent as a guardian ad litem for order of protection cases in Cole County. Gavin found his passion here. He saw the kids in the legal system as voiceless victims who needed an advocate. He saw himself in them and sought to make sure they never felt alone in the same way he had felt alone after his own childhood

abuse. When he was offered a position back in St. Louis with Hardy Menees a few years later, Gavin eagerly accepted it. He was grateful to be back near his daughter and excited to take on family law work, which he had grown to love.


**Gavin, his parents, and his newborn daughter**


**Gavin and his daughter**

And Gavin did love his work. He felt immense pride at helping people navigate the court system during some of the most difficult and heartbreaking times of their lives. He worked hard and was recognized for his efforts, taking calls at all hours, going to clients' homes to help mediate. He did good work and was made partner. But the nature of the work was stressful. The caseloads were high. Gavin was having a hard time keeping up. Then Covid hit and he began to spiral.

Gavin had recently ended a long-term relationship and was alone for the first time in his adult life. He was working from home, with no roommate or partner around, and became extremely isolated. He had long relied on Adderall to help him deal with his workload, both in law school and once he became an attorney. But now his addiction was out of control. At night he would drink, half a pint of hard liquor at a time, to come down from the amphetamine and get a few hours asleep before waking up and doing it all over again. He was depressed. He was anxious. And he was using drugs and alcohol to medicate it. [9]

---

[9] Research has shown that adoptees have a 43% higher prevalence of any lifetime Substance Abuse Disorder compared to non-adoptees. Yoon G, Westermeyer J, Warwick M, Kuskowski MA (2012) *Substance Use Disorders and Adoption: Findings from a National Sample*, *available at* https://doi.org/10.1371/journal.pone.0049655.

Rather than reach out for help from friends or family, Gavin internalized what he had learned as a child when he needed help before: he was on his own. No one would be there to help him. [10]

Deep in his addiction, Gavin was no longer able to be the respectable "counselor" he had worked so long and so hard to be. He had lost his ability to determine right from wrong and began making a series of nonsensical decisions that destroyed his legal career and led him to this Court today. Gavin is at his rock bottom. He recognizes that he has hurt so many people in the last few years, not least of all his clients, his former employer, his beloved legal profession, and the friends and family that were devastated that he could not go to them for help. In many ways, he has burned his previous life to the ground. But out of that destruction, Gavin has hope that he can build a new future. He has faith that this experience does not have to be in vain and that he can use his mistakes and his struggles to help others and do good in his community. He would like to become a peer counselor for others who suffer from addiction. He knows he has a long road ahead of him, in maintaining his sobriety, getting proper treatment for his mental health, and repaying his monetary debts. But he is willing to once again roll up his sleeves to do the work. His loving family and friends are still there behind him.

WHEREFORE, counsel requests this Court vary from the advisory guideline range and consider Mr. Wynne's history and characteristics when determining the appropriate sentence in this cause.

Respectfully submitted,

/s/ *Bevy A. Beimdiek*
BEVY A. BEIMDIEK  #33753 MO
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101

---

[10] Experiencing a traumatic event increases the risk of developing a substance abuse problem. Trauma—in the form of physical or sexual abuse, domestic violence, natural disasters, car accidents, traumatic loss, war, or other calamity—may lead to substance abuse and addiction. People with a history of trauma may drink or take drugs in an attempt to manage or self-medicate their feelings of anxiety, physiological arousal, depression, hopelessness, and/or grief. The National Child Traumatic Stress Network, *Understanding Links Between Adolescent Trauma and Substance Abuse*, available at http://www.nctsnet.org/nctsn_assets/pdfs/Linking_Trauma_and_Substance_Abuse_Complete_4-18-07.pdf.

Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Bevy_Beimdiek@fd.org

ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Derek Wiseman, Assistant United States Attorney.

/s/ *Bevy A. Beimdiek*
BEVY A. BEIMDIEK
Assistant Federal Public Defender